UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ARKANSAS OKLAHOMA GAS
CORPORATION                                                                                              PLAINTIFF

v.                                        No. 2:21-CV-02073

BP ENERGY COMPANY                                                                                    DEFENDANT

**OPINION AND ORDER**

Before the Court are cross-motions for summary judgment (Docs. 77, 82) filed by Plaintiff Arkansas Oklahoma Gas Corporation ("AOG") and Defendant BP Energy Company ("BP"). The Court has carefully reviewed the parties' briefs, exhibits, and statements of facts supporting or opposing their respective motions.[1] For the reasons given below, AOG's motion is DENIED, and BP's motion is GRANTED IN PART AND DENIED IN PART. Specifically, AOG's claim for breach of contract survives for trial, but AOG's claim for unjust enrichment is dismissed with prejudice.

**I.   Background**

As this Court has previously recounted:

> AOG is a utility company that provides natural gas to roughly 60,000 customers in Arkansas and Oklahoma. BP supplies natural gas to AOG under a contract between the parties ("the Contract"). According to AOG, during the relevant period the Contract required BP to provide AOG with up to 30,000 MMBtu of natural gas per

---

[1] Unredacted versions of most of these documents were filed under seal pursuant to a stipulated protective order (Doc. 36). The unredacted versions of the parties' summary judgment filings can be found at the following locations on the docket: AOG's motion for summary judgment (Doc. 85), brief in support (Doc. 86), and statement of undisputed facts (Doc. 87); BP's response in opposition (Doc. 91) and statement of disputed facts (Doc. 90); and AOG's reply in support of its motion (Doc. 99); as well as BP's motion for summary judgment (Doc. 80), brief in support (Doc. 81), and statement of undisputed facts (Doc. 79); AOG's response in opposition (Doc. 94) and statement of disputed facts (Doc. 95); and BP's reply in support of its motion (Doc. 97).

> day, on demand, at a specified price—for which AOG paid BP a monthly "demand charge" as consideration. *See* Doc. 50, ¶¶ 6–9.

(Doc. 69, p. 1). The Contract described BP's performance obligation as "firm," meaning that BP "may interrupt its performance without liability only to the extent that such performance is prevented for reasons of Force Majeure." *See* Doc. 85-1, p. 16, § 2.19.

In February 2021, Winter Storm Uri struck the southern United States. AOG alleges that on each day from February 15 through February 19, 2021, it sought 30,000 MMBtu of natural gas from BP. However:

> [D]uring this period BP only provided a total of 30,950 MMBtu—which was 119,050 MMBtu short of the total 150,000 units that AOG requested. *See* Doc. 50, ¶¶ 10–19. AOG claims that it spent $34,401,735.25 covering this shortfall by purchasing natural gas from other providers. *See id.* On March 12, 2021, AOG invoiced BP for damages in that amount, arguing that BP was obligated under the Contract to compensate AOG for these expenditures. *See id.* at ¶¶ 20–21. Five days later, BP sent AOG a "Notice of Force Majeure," contending that "extreme weather conditions and historic freezing temperatures" excused BP from its obligations under the Contract during the period at issue. *See id.* at ¶¶ 22–24. AOG filed this lawsuit on March 29, 2021. Its operative complaint asserts two counts against BP: one for breach of contract and one for unjust enrichment. *See id.* at ¶¶ 25–34.

(Doc. 69, pp. 1–2) (internal citation altered).

On July 12, 2022, both parties moved for summary judgment. The motions are fully briefed and ripe for decision.

**II.     Legal Standard**

On a motion for summary judgment, the burden is on the moving party to show that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. The same standard applies to cross-motions for summary judgment, with each motion reviewed in its own right and each opposing party "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record." *Wermager v. Cormorant*

*Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983).  Once the movant has met its burden, the non-movant must present specific facts showing a genuine dispute of material fact exists for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In order for there to be a genuine dispute of material fact, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."  *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66–67 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

**III.    Discussion**

The central issues in the parties' motions are whether BP's nonperformance under the Contract is excused by force majeure, and whether AOG's claim for unjust enrichment is precluded by the Contract (either by the Contract's terms or by its mere existence).  Below, the Court will first discuss the issue of force majeure.  Then it will take up AOG's claim for unjust enrichment.

**A.    Force Majeure**

The section of the Contract dealing with force majeure reads, in relevant part, as follows:

SECTION 11.  FORCE MAJEURE

11.1   . . . [N]either party shall be liable to the other for failure to perform a Firm obligation, to the extent such failure was caused by Force Majeure.  The term "Force Majeure" as employed herein means any cause not reasonably within the control of the party claiming suspension, as further defined in Section 11.2.

11.2   Force Majeure shall include, but not be limited to, the following: . . . (ii) weather related events affecting an entire geographic region, such as low temperatures which cause freezing or failure of wells or lines of pipe . . . .  Seller and Buyer shall make reasonable efforts to avoid the adverse impacts of a Force Majeure and to resolve the event or occurrence once it has occurred in order to resume performance.

11.3   Neither party shall be entitled to the benefit of the provisions of Force Majeure to the extent performance is affected by any or all of the following circumstances: (i) the curtailment of interruptible or secondary Firm transportation unless primary, in-path Firm transportation is also curtailed; . . . or (v) the loss or failure of Seller's gas supply or depletion of reserves, except, in either case, as provided in Section 11.2. . . . .

(Doc. 85-1, p. 22). The Contract also states, and the parties do not dispute, that it is governed by Texas law. *See id.* at 23, § 15.5; *see also* Doc. 81, p. 17; Doc. 94, p. 10. Under Texas law, "[t]he party seeking to excuse its performance under a contractual *force majeure* clause . . . bears the burden of proof to establish that defense." *Va. Power Energy Mktg., Inc. v. Apache Corp.*, 297 S.W.3d 397, 402 (Tex. App. 2009).

The parties do not dispute that Winter Storm Uri was a weather-related event affecting an entire geographic region, during which low temperatures caused freezing or failure of wells or lines of pipe. *See* Doc. 79, ¶ 53; Doc. 95, ¶ 53. This type of event is one which Section 11.2 of the Contract expressly defines as a force majeure event. There also is no dispute that BP failed to perform a firm obligation under the Contract during Winter Storm Uri. *See, e.g.*, Doc. 87, ¶ 99; Doc. 90, ¶ 99. However, the critical question under Section 11.1 is not whether BP's failure to perform coincided with a force majeure event, but rather the extent, if any, to which BP's failure was *caused by* the force majeure event. *See* Doc. 85-1, p. 22 ("[N]either party shall be liable to the other for failure to perform a Firm obligation, to the extent such failure was *caused by* Force Majeure." (emphasis added)).

AOG contends that BP's failure was not caused by Winter Storm Uri itself, but rather was caused by BP's failure to secure sufficient firm sources of gas supply and transportation prior to the Storm. BP disagrees, arguing among other things that it was either impossible or commercially unreasonable to obtain additional firm sources of gas supply for AOG, that doing so would have made no difference during Winter Storm Uri anyway, and that regardless BP had no legal obligation to do so. To the last point, BP asserts that "Texas law is well established that due diligence is not required under force-majeure clauses." *See* Doc. 97, p. 4 (quoting *Moore v. Jet Stream Invs., Ltd.*, 261 S.W.3d 412, 422 (Tex. App. 2008)). However, Texas law is actually more

4

nuanced than that; *Moore* itself qualifies this rule with "[u]nless the [contract] provides otherwise." *See Moore*, 261 S.W.3d at 422.  The bottom line under Texas law is that parties must expend as much reasonable effort or due diligence to avoid force majeure events or their effects as their contracts require, and no more than that.[2]  *See, e.g.*, *Sun Operating Ltd. P'ship v. Holt*, 984 S.W.2d 277, 283–84 (Tex. App. 1998) (distinguishing the contract before it with the one in *United Gas Pipe Line Co. v. F.E.R.C.*, 824 F.2d 417, 432 n.19 (5th Cir. 1987), the latter expressly limiting force majeure events to those "which by the exercise of due diligence [the invoking party] was unable to prevent or overcome").

Here, the Contract defines force majeure as "any cause *not reasonably within the control of the party claiming suspension*." (Doc. 85-1, p. 22) (emphasis added).  Obviously BP cannot control the weather; so to whatever extent Winter Storm Uri was the cause of BP's failure to perform, then that cause was not reasonably within BP's control.[3]  But likewise, to whatever extent BP's failure to perform was caused by its failure to secure sufficient firm supply or transportation, then BP can avoid liability only if its failure to secure sufficient firm supply or transportation was "not reasonably within [its] control."  Importantly, Section 11.1 contemplates the possibility that

---

[2] In this regard, Texas is different from some other states which impose limitations like "reasonable control," "prudence," or "diligence" on parties invoking force majeure regardless of whether the contractual language requires it.  *See, e.g.*, *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales*, 729 F.2d 1530, 1540 (5th Cir. 1984) (California law); *Jin Rui Grp., Inc. v. Societe Kamel Bekdache & Fils S.A.L.*, 621 F. App'x 511, 511–12 (9th Cir. 2015) (California law); *Chemetron Corp. v. McLouth Steel Corp.*, 381 F. Supp. 245, 256 (N.D. Ill. 1974) (Michigan law and Uniform Commercial Code).

[3] This is distinguishable from the facts of *Hydrocarbon Mgmt., Inc. v. Tracker Exploration, Inc.*, in which the claimed force majeure event—a regulatory shut-in order—was held to have been reasonably within the invoking party's control, because that event was caused by the invoking party's failure to comply with the regulatory agency's requirements.  *See* 861 S.W.2d 427, 436–37 (Tex. App. 1993).

5

a failure to perform can be caused in part by a force majeure event and in part by circumstances reasonably within the control of the party claiming suspension; and under such circumstances it only protects the invoking party from liability "*to the extent* such failure was caused by" the force majeure event.  *See id.* (emphasis added).

This inquiry is necessarily very fact-driven, informed by a host of environmental conditions including not only the weather, but also infrastructure, markets, and industry norms.[4]  The Court has carefully reviewed the record before it, and concludes that it must weigh expert testimony and assess the credibility of witnesses in order to determine the extent, if any, to which BP's failure to perform was caused by circumstances not reasonably within BP's control.  These tasks are not appropriate for summary judgment.  *See, e.g.*, *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021).  Similar problems of weighing evidence prevent the Court from finding at this stage whether BP's performance was affected by the curtailment of interruptible or secondary firm transportation; and if so, then whether primary, in-path, firm transportation was also curtailed.[5]  And, for the same reasons, material factual disputes remain as to whether AOG and another regional utility called Black Hills Energy Arkansas, Inc. were "similarly situated Firm Gas customers" within the meaning of the Contract's "Special Provisions" to Section 11.2,[6] such

---

[4] Thus cases involving different industries and events from the ones here, such as *Chemetron*, 381 F. Supp. at 256, provide relatively limited guidance for this factual inquiry.

[5] As previously noted, under Section 11.3(i) of the Contract, BP is not entitled to the benefits of the force majeure provision "to the extent performance is affected by . . . the curtailment of interruptible or secondary Firm transportation unless primary, in-path Firm transportation is also curtailed."  *See* Doc. 85-1, p. 22.

[6] "To the extent an event of Force Majeure occurs, Seller or Buyer will allocate the supply or purchase of Firm Gas for affected transactions, as applicable, on a pro rata basis with other similarly situated Firm Gas customers."  (Doc. 85-1, p. 28).

that BP would have been required to allocate gas between them on a *pro rata* basis during Winter Storm Uri.

In short, many material factual disputes remain outstanding as to AOG's claim for breach of contract. Therefore, summary judgment is not appropriate on that claim, and it survives for bench trial.

**B.     Unjust Enrichment**

AOG also brings a claim for unjust enrichment, by which it seeks to recover the monthly "demand fee" that it paid BP under the Contract to ensure firm gas supply. This claim is precluded by the express terms of the Contract, as well as by Texas law.

Section 13 of the Contract, entitled "Limitations," states in relevant part:

> FOR BREACH OF ANY PROVISION FOR WHICH AN EXPRESS REMEDY OR MEASURE OF DAMAGES IS PROVIDED, SUCH EXPRESS REMEDY OR MEASURE OF DAMAGES SHALL BE THE SOLE AND EXCLUSIVE REMEDY. A PARTY'S LIABILITY HEREUNDER SHALL BE LIMITED AS SET FORTH IN SUCH PROVISION, AND ALL OTHER REMEDIES OR DAMAGES AT LAW OR IN EQUITY ARE WAIVED.

(Doc. 85-1, p. 22) (emphasis in original). AOG paid BP a monthly demand fee under the Contract to ensure firm gas supply. BP failed to deliver the contracted-for gas supply during Winter Storm Uri. Section 3.2 of the Contract sets out the method of calculating damages "in the event of a breach of a Firm obligation to deliver or receive Gas," and further provides that this method is "[t]he sole and exclusive remedy of the parties" for such an event. *See id.* at 17; *see also id.* at 14 (Base Contract, selecting "Cover Standard (default)" as the contracted-for remedy under Section 3.2).

Texas law is clear that generally[7] a party cannot recover under an unjust-enrichment theory "when a valid, express contract covers the subject matter of the parties' dispute." *See Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). "That is because parties should be bound by their express agreements. When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement." *Id.* Unjust enrichment is an equitable theory. *See Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). Allowing AOG to recover more damages in equity than would be permitted under either Section 3.2 or Section 11 (if applicable) of the Contract would "thwart the effect of the contract." *See Guardian Life Ins. Co. v. Kinder*, 663 F. Supp. 2d 544, 555 (S.D. Tex. 2009). In Texas this is "precluded, as a matter of law." *Id.*

## IV. Conclusion

IT IS THEREFORE ORDERED that Plaintiff Arkansas Oklahoma Gas Corporation's motion for summary judgment (Doc. 82) is DENIED and Defendant BP Energy Company's motion for summary judgment (Doc. 77) is GRANTED IN PART AND DENIED IN PART. AOG's claim for breach of contract survives for trial, but AOG's claim for unjust enrichment is dismissed with prejudice.

---

[7] There are some exceptions that are not applicable here. For example, if a party pays more than is required under a contract, then he may recover the excess payment under a theory of unjust enrichment. *See Sw. Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 469–70 (Tex. 1998). Unjust enrichment may also be available when a contract covering the subject matter of the dispute is "unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other legal reasons." *City of Harker Heights v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 319 (Tex. App. 1992). Importantly, *Harker*'s "not fully performed" language refers not to an ordinary breach but rather to circumstances which could warrant "rescission or cancellation of a contract." *See, e.g.*, *Pasadena Assocs. v. Connor*, 460 S.W.2d 473, 480 (Tex. App. 1970) (cited in *Harker*, 830 S.W.2d at 319).

IT IS SO ORDERED on this 21st day of November, 2022.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE