UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ARKANSAS OKLAHOMA GAS
CORPORATION                                                                                          PLAINTIFF

v.                                            No. 2:21-CV-02073

BP ENERGY COMPANY                                                                                 DEFENDANT

**OPINION AND ORDER**

Before the Court are Plaintiff Arkansas Oklahoma Gas Corporation's ("AOG") motion to amend judgment to include prejudgment interest (Doc. 139) and brief in support (Doc. 140), Defendant BP Energy Company's ("BP") response in opposition (Doc. 145), and AOG's reply in support (Doc. 149). Also before the Court are AOG's petition for attorney's fees and costs (Doc. 137) and brief in support (Doc. 138), BP's response in opposition (Doc. 141), and AOG's reply in support (Doc. 144). For the reasons given below, AOG's motion to amend judgment will be GRANTED, and AOG's petition for attorney's fees and costs will be GRANTED IN PART AND DENIED IN PART.

**I.     Background**

AOG, a utility company, brought this lawsuit for breach of contract against BP, a natural-gas supplier. AOG alleged that during Winter Storm Uri, from February 15 through 19, 2021, BP failed to provide AOG with the full 30,000 MMBtu of natural gas per day to which AOG was contractually entitled. BP contended that its failure to perform was excused by *force majeure*. The Court conducted a four-day bench trial in December 2022. On May 24, 2023, the Court issued extensive findings of fact and conclusions of law (Doc. 133) based on the evidence received at trial. That same day, the Court entered judgment (Doc. 134) in favor of AOG, awarding it $18,033,617.90 in damages on its claim for breach of contract, and post-judgment interest at the

1

annual rate of 4.91%. AOG filed its petition for attorney's fees and costs on June 20, and its motion to amend judgment to include prejudgment interest on July 5. Both of these requests have been fully briefed and are now ripe for decision.

## II.   Discussion

### A.   Motion to Amend Judgment

The Court's judgment did not include an award of prejudgment interest. This omission was not the result of any deliberation on the Court's part. AOG never requested prejudgment interest during the trial, nor in pre-trial or post-trial briefing. Accordingly, the Court simply never considered whether to award prejudgment interest. AOG has now moved under Federal Rule of Civil Procedure 59(e) for the judgment to be amended to include a prejudgment interest award. BP opposes this request.

The parties agree that *if* the Court were to award prejudgment interest, then the rate should be the one set forth in the contract that was the subject of this litigation.[1] That rate is the "then-effective prime rate" published in the *Wall Street Journal* plus two percent, accruing from the date payment was due on AOG's final invoice (April 5, 2021) until the date judgment was entered in this case (May 24, 2023). *See* Doc 2-1, p. 8, § 7.5. The *Wall Street Journal* prime rate varied throughout this time period, *see* Doc. 145-1, but if each day's prejudgment interest accrual were

---

[1] "[F]ederal law governs the award of postjudgment interest . . . while state law governs the award of prejudgment interest." *ResCap Liquidating Tr. v. Primary Residential Mortg., Inc.*, 59 F.4th 905, 922 (8th Cir. 2023). The contract in this case is governed by Texas law. *See* Doc. 133, p. 5. Under Texas law, prejudgment interest on an award for breach of contract accrues as simple interest, at the same rate which Texas law requires for post-judgment interest on such awards. *See Johnson & Higgins of Texas, Inc. v. Kenneco En., Inc.*, 962 S.W.2d 507, 530, 532 (Tex. 1998). And under Texas law, post-judgment interest on damages for breach of contract accrues at whatever rate the contract itself specifies, so long as that rate does not exceed 18% per year. *See* Tex. Fin. Code § 304.002.

calculated in accordance with the rate that was in effect on that day,[2] then that would result in a total prejudgment interest award of $2,640,567.53.  *See* Doc. 145, p. 11 (internally numbered p. 10).

However, the parties disagree on whether the Court should award prejudgment interest at all now.  BP argues that although AOG's pleadings contained a demand for prejudgment interest, *see* Doc. 50, p. 8, AOG effectively waived this demand by failing to renew or brief it at any point between the filing of its operative complaint and the entry of judgment.  In particular, BP insists that the issue of prejudgment interest is not properly the subject of Rule 59(e) motion when that issue was never briefed at any time before the entry of judgment.  This is because "Rule 59(e) motions serve a limited function of correcting manifest errors of law or fact or to present newly discovered evidence," and "cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment."  *See Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998).  However, notwithstanding this general principle, the Eighth Circuit explicitly held in *Continental Indemnity Co. v. IPFS of New York, LLC*, that a district court has discretion to consider a request for prejudgment interest that is briefed for the first time in a Rule 59(e) motion.  *See* 7 F.4th 713, 718–19 (8th Cir. 2021).

---

[2] *See, e.g.*, *Hess Corp. v. Eni Petroleum US LLC*, 2013 WL 11059078 at *1 (N.J. Super. Ct. Mar. 7, 2013) (holding that prejudgment interest rate under similar contract should "be adjusted in accordance with all applicable changes in the [*Wall Street Journal*] prime rate"); *cf. SCNO Barge Lines, Inc. v. Sun Transp. Co.*, 775 F.2d 221, 226 (8th Cir. 1985) (prejudgment interest "should be awarded at a rate in keeping with the prevailing rate of interest in effect during the applicable time period"); *In re Oil Spill by Amoco Cadiz Off Coast of France on March 16, 1978*, 954 F.2d 1279, 1333 (7th Cir. 1992) (observing that for prejudgment interest "it is necessary to use the rates in force during the case and not whatever rate prevails at the end").

Under Texas law, the decision whether to award prejudgment interest on a breach of contract claim is committed to the Court's discretion, which should be guided by equitable principles and public policy. *See Whitlock v. CSI Risk Mgmt., LLC*, 2021 WL 1712215, at *15 (Tex. App. Apr. 30, 2021). However, the precise scope of that discretion is unclear, to say the least.

Under an older statutory regime (Tex. Rev. Civ. Stat. Ann. Art. 5069–1.03), which was repealed in 1997, prejudgment interest was mandatory in contract cases when an ascertainable sum was due at a definite date prior to judgment. *See Am. Int'l Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 540–41 (5th Cir. 1987). Texas caselaw also provided courts with discretion to make equitable awards of prejudgment interest in contract cases where such awards were not statutorily required. *See id.* at 541. The Fifth Circuit, which geographically embraces Texas, interpreted these cases to require that "an equitable award of prejudgment interest should be granted to a prevailing plaintiff in all but exceptional circumstances."[3] *Id.*; *see also Concorde Limousines, Inc. v. Moloney Coachbuilders, Inc.*, 835 F.2d 541, 548–49 (5th Cir. 1987). Although the old statutory regime was eventually repealed, making equity the only basis for awards of prejudgment interest in contract cases, the Fifth Circuit has continued to hold that if a district court exercises its discretion to deny prejudgment interest to a prevailing party on a contract claim, then the district court must explain the exceptional circumstances that justify its decision. *See, e.g.*, *Joy Pipe, USA, L.P. v. ISMT Ltd.*, 703 Fed. App'x 253, 257–58 (5th Cir. 2017).

This Court has been unable to find any Texas cases that employ the Fifth Circuit's "exceptional circumstances" language when discussing equitable prejudgment interest on contract

---

[3] This Court has not found any Eighth Circuit cases addressing the scope of discretion that Texas law provides district courts when awarding prejudgment interest on contract claims.

claims. However, the Fifth Circuit's characterization of Texas caselaw appears substantively consistent with Texas courts' interpretation of the equitable rule.

For example, in the unpublished 2022 case of *Ellison v. Three Rivers Acquisition LLC*, a victorious contract claimant argued on appeal that "the trial court erred in failing to include prejudgment interest in the judgment," and that "an award of prejudgment interest on past damages is mandatory." *See* 2022 WL 17663839, at *14 (Tex. App. Dec. 15, 2022). The Court of Appeals did not directly endorse or reject the claimant's "mandatory" language, but its recital of the legal standard included the traditional permissive vocabulary. *See id.* ("Prejudgment interest *may* be awarded on a breach of contract claim under common law equitable principles . . . . (emphasis added)). The Court of Appeals then observed that the claimant "is entitled to recover on its breach of contract claim," and that "[t]herefore, any award of prejudgment interest is governed by the common law." *Id.* Next, it simply identified the date on which prejudgment interest began to run and the applicable interest rate, noted its own authority to determine these things and to "reform a trial court's judgment accordingly," and then held that "the trial court erred in failing to award prejudgment interest and calculate the prejudgment interest at five percent simple interest." *Id.* Notably, the opinion never explained what the trial court's error was, other than that an award of prejudgment interest was not given to a prevailing contract claimant. *See id.*

A similar reversal occurred in the 2018 case of *Fortitude Energy, LLC v. Sooner Pipe LLC*, after the trial court awarded the plaintiff summary judgment on its breach-of-contract claim but did not award prejudgment interest. *See* 564 S.W.3d 167, 173 (Tex. App. 2018). The Court of Appeals' analysis was rather perfunctory: after reciting the applicable standard, it simply observed that the plaintiff had repeatedly requested prejudgment interest in the proceedings below, and that "[n]o evidence in the record supports the trial court's failure to award prejudgment interest." *See*

5

*id.* at 188–89.  The Court then "agree[d] with [the plaintiff] that it was entitled to prejudgment interest and that the trial court erred by failing to award prejudgment interest in its final judgment." *Id.* at 189.  As in *Ellison*, the Court of Appeals never explained *why* the trial court's failure to award prejudgment interest was erroneous; apparently reversal was warranted simply because no explanation for the failure to award interest had ever been given.

Likewise, in the 2017 case of *Trevino v. City of Portland*, the Texas Court of Appeals reversed the trial court's decision not to award prejudgment interest to plaintiffs who had prevailed on a breach-of-contract claim.  *See* 531 S.W.3d 290, 297–98 (Tex. App. 2017).  After quickly describing the lawsuit as a breach-of-contract claim arising from a dispute over the amount owed, the Court stated: "Given this dispute over the amount . . . the [defendant] agreed to pay the [plaintiffs], we conclude that the [plaintiffs] are entitled to prejudgment interest, and the trial court abused its discretion by denying it."  *See id.* at 298.  Once again, the Court did not identify any particular error in the trial court's reasoning; rather, the error seemed simply to be that prejudgment interest was not awarded and that there was no apparent justification for this denial.

An instructive contrast is presented by *Sky Interests Corporation v. Moisdon*, an unpublished case from 2019.  There, the Texas Court of Appeals affirmed a trial court's denial of prejudgment interest on a contract claim, but cited specific facts that would have made an award of prejudgment interest inappropriate.  Specifically, although the prevailing party had "lost the use of the rental income" it was owed during the relevant period, it had also "improperly maintained control over [its opponent]'s property, which had greater value, over the same time period."  *See* 2019 WL 3423279, at *4 (Tex. App. July 30, 2019) (affirming denial of prejudgment interest).  Thus, an award of prejudgment interest would have effectively resulted in *over*compensation and accordingly would have been inequitable.  *See id.*

From all of this, four foundational principles emerge.  First, the Eighth Circuit permits this Court to consider a request for prejudgment interest that is briefed for the first time in a Rule 59(e) motion.  Second, under Texas law, whether to award prejudgment interest on damages for breach of contract is committed to this Court's discretion.  And third, this Court's exercise of that discretion must be guided by equitable principles and public policy.

Fourth and finally, however, the scope of that discretion is rather limited.  Texas public policy clearly favors awarding prejudgment interest on damages for breach of contract, such that awarding prejudgment interest is effectively a default which can only be departed from if specific facts make such an award inequitable.  Importantly, *Trevino* demonstrates that the fact that contract damages were not fully liquidated before litigation commenced is *not* sufficient grounds to deny prejudgment interest.  *See also Concorde Limousines*, 835 F.2d at 548–49 (observing that under Texas law, "damages need not be liquidated to form the basis for [an equitable award of] prejudgment interest").

Given the foregoing, this Court concludes that under Texas law, it would be an abuse of discretion not to award AOG prejudgment interest on its contract damages.  As already noted, AOG requested prejudgment interest in its pleadings.  BP has received an adequate opportunity in its Rule 59(e) briefing to oppose this request, and has not pointed to any facts showing that such an award would be inequitable here.  There is no indication, for example, that such an award would overcompensate AOG beyond what benefit it would have gotten if it had timely received and prudently invested what BP contractually owed it.  It is true the claim was not liquidated and the parties disputed the amount in controversy, but as already discussed, that makes no difference under Texas law.  Therefore, the Court will grant AOG's motion and amend the judgment to

include an award of prejudgment interest in the amount of $2,640,567.53, in accordance with the methodology described near the beginning of subsection II.A of this opinion and order.

AOG is also entitled to postjudgment interest on this award of prejudgment interest. *See Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, Pa.*, 735 F.3d 993, 1008 (8th Cir. 2013). Although prejudgment interest stopped accruing on the date the original judgment was entered in this case (May 24, 2023), *see id.* at 1007, postjudgment interest on this prejudgment interest award will only begin accruing from today's date, rather than from the date of the original judgment when prejudgment interest stopped accruing, *see id.* at 1008–09. The Court would observe that this gap in accrual makes little economic sense, especially given that the rate and date of postjudgment interest accrual on AOG's underlying contract damages award of $18,033,617.90 will remain unchanged from what was specified in the original judgment. *See generally Bader Farms, Inc. v. Monsanto Co.*, 2022 WL 17496064 (E.D. Mo. Dec. 8, 2022) (collecting cases). Given the latter fact, allowing prejudgment interest to accrue up through today's date would create a several-month overlap in the accrual of prejudgment and postjudgment interest on the underlying damages award, thus providing an inequitable double-recovery. *Cf. Finan v. Good Earth Tools, Inc.*, 2011 WL 147738, at *5 (E.D. Mo. Jan. 18, 2011). The better solution would be to backdate accrual of postjudgment interest on the prejudgment interest award, so that it begins accruing on May 24, 2023 rather than today. However, in *Travelers* the Eighth Circuit opted against this course when presented with a similar scenario, though it never explained why. *See* 735 F.3d at 1008–09. It is unclear whether this was intentional or merely an oversight. Regardless, this Court believes itself constrained by *Travelers*, and accordingly will adhere to what was done therein. If, on appeal, the Eighth Circuit wishes to clarify or depart from its precedent on this point, then that is of course its prerogative.

### B. Petition for Attorney's Fees and Costs

AOG is requesting an award of $1,730,085.14 in attorney's fees and $112,448.54 in costs. BP opposes this request and argues that any award of fees and costs to AOG should be significantly lower than the requested amount.

As previously noted, the contract in this case is governed by Texas law. *See* Doc. 133, p. 5. However, "[a]s a federal court sitting in diversity, we apply state law governing the award of attorney's fees," and "to determine which state's law to apply, we look to the conflict-of-law principles of Arkansas, the forum state." *Randy Kinder Excavating, Inc. v. JA Manning Constr. Co.*, 8 F.4th 724, 727 (8th Cir. 2021). The Eighth Circuit has explained:

> Under its conflict-of-law principles, Arkansas courts apply another state's law only when the issue before the court is substantive rather than procedural. And Arkansas treats the issue of attorney's fees as a procedural matter governed by the laws of the State of Arkansas.

*Id.* (internal citations and quotation marks omitted). Therefore, Arkansas law governs AOG's request for attorney's fees.

Ark. Code Ann. § 16-22-308 states that "[i]n any civil action to recover . . . for . . . breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs." An award of attorney's fees under this statute "is permissive and discretionary with the trial court." *Chrisco v. Sun Indus., Inc.*, 304 Ark. 227, 229, 800 S.W.2d 717, 718 (1990). When exercising that discretion, the trial court should be mindful that "there is no fixed formula in determining the computation of attorney's fees." *Id.* Instead:

> the courts should be guided by recognized factors in making their decision, including the experience and ability of the attorney, the time and labor required to perform the legal service properly, the amount involved in the case and the result obtained, the novelty and difficulty of the issues involved, the fee customarily charged in the locality for similar legal services, whether the fee is fixed or

9

>contingent, the time limitations imposed upon the client or by the circumstances, and the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

*Id.* at 229, 800 S.W.2d at 718–19.

Most of these factors are not controversial in this case. There can be no reasonable dispute that both parties' attorneys are extremely experienced and practicing at the highest levels of their profession. The amount involved in this case was, by local standards, enormous. The Court knows well from its own work on this case that the issues involved were extraordinarily novel and difficult. And the fee AOG seeks to recover was fixed rather than contingent, representing a much smaller percentage of the judgment than is typically sought in contingency-fee cases in this area. All those factors weigh in favor of a very substantial fee award.

The parties' dispute centers around only three factors: (1) the result obtained; (2) the fee customarily charged in the locality for similar legal services; and (3) the time and labor required to perform the legal service properly. Each of these will be discussed below.

Regarding the first of these three factors, BP points out that AOG's claim for unjust enrichment was dismissed with prejudice on summary judgment, and that the award of $18,033,617.90 in damages that AOG ultimately obtained on its contract claim was only about 52% of the $34,401,735.25 that AOG sought on that claim. BP also points to several other legal theories on which AOG ultimately did not prevail, although those theories' failure did not impact the damages awarded. From this, BP contends that AOG should only be awarded 52% of the fees it seeks (at most), so that the size of the fee award will be proportionate to the degree of success obtained.

The Court disagrees with BP. As already mentioned above, "there is no fixed formula in determining the computation of attorney's fees." *Id.* at 229, 800 S.W.2d at 718. Further, the Court

does not believe dismissal of AOG's unjust enrichment claim constituted any meaningful reduction in the measure of success that AOG achieved. It seems clear that AOG's unjust enrichment claim effectively functioned as a "backup plan" for AOG in the event its primary claim for breach of contract failed. Both claims essentially depended on the same nucleus of facts. The amount AOG sought to recover for unjust enrichment was far less than it sought for breach of contract. The parties devoted far less briefing on summary judgment to AOG's unjust enrichment claim than to AOG's contract claim. And as the Court's summary judgment order held, one generally cannot recover for unjust enrichment when a valid contract covers the dispute—meaning that even if AOG had prevailed on both its unjust enrichment and breach-of-contract claims at trial, it still would only have been able to recover for the latter. In short, as between the contract and unjust enrichment claims, AOG obtained the maximum relief available to it.

As for the discrepancy between the amount of damages AOG sought for breach of contract and the amount it ultimately recovered, the Court does not believe this constitutes any meaningful reduction in the measure of success that AOG achieved. The reason for this discrepancy was not any shortcoming or failure of advocacy on the part of AOG's counsel; indeed, AOG established BP's breach of contract with respect to nearly all of the damages it sought. Rather, the discrepancy was the result of BP's successful *force majeure* defense with respect to losses of gas supply from certain sources. Given the caliber of advocacy from BP's lawyers, it strikes this Court as very unlikely that counsel for AOG could have prevented their opponents from accomplishing that. The facts and the law are what they are, and clever strategy or artful tricks can only carry a party so far against an equally skilled opponent. In the Court's view, both sides benefitted from outstanding advocacy and AOG ultimately obtained all relief to which it was entitled. In light of such "excellent results," AOG's attorneys "should recover a fully compensatory fee" that

"encompass[es] all hours reasonably expended on the litigation." *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

The Court turns now to the second disputed factor: the fee customarily charged in the locality for similar legal services. BP contends that the relevant "locality" here is the geographic area where this case was tried—Fort Smith, Arkansas—and that the hourly rates charged by AOG's Washington, D.C. attorneys far exceed the rates of similarly experienced and skilled oil and gas attorneys in Fort Smith.

Here, BP is on firmer ground. It is certainly true, as this Court and the Eighth Circuit have both previously held, that "as a general rule, a reasonable hourly rate is the prevailing market rate . . . for similar work in the community where the case has been litigated." *Cooper Clinic, P.A. v. Mercy Clinic Fort Smith Communities*, 2015 WL 1097383, at *1 (W.D. Ark. Mar. 11, 2015). It is also true that in and around Fort Smith, the market rate for lawyers with substantial oil and gas litigation experience ranges from $300 to $400 per hour for partners and senior members of law firms, from $200 to $250 per hour for associates, and from $100 to $150 per hour for paralegals, law clerks, and summer associates. *See* Doc. 141-1.

However, there is one snag in this argument: the words "for similar work." Although there is certainly a skilled and experienced oil and gas bar in and around Fort Smith, cases as large and complex as this one are extremely unusual in this area. In some respects, this was the most complex civil case that the undersigned has ever tried during his career on the bench. The Court does not believe one can meaningfully speak of a prevailing market rate in Fort Smith, Arkansas for lead counsel on litigation of this complexity, since the market in question is nearly nonexistent. Therefore, the Court believes that this is one of the rare cases where it is appropriate to depart from the "general rule" described above. Capping AOG's D.C. attorneys' rates at Fort Smith levels

12

would result in a significant under-recovery that does not reflect the excellent results they obtained. *Cf. Hensley*, 461 U.S. at 435 ("The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward . . . ."). Therefore, the Court in its discretion makes the following findings: (1) the hourly rates charged by AOG's Arkansas counsel are reasonable; and (2) the hourly rates charged by AOG's D.C. counsel through September 30, 2021 (but not the increases in hourly rate thereafter) are reasonable, except that (A) a reasonable hourly rate for AOG's D.C. paralegal is $150.00; and (B) a reasonable hourly rate for AOG's D.C. trial tech specialists is $300.00.[4]

The third disputed factor is the time and labor required to perform the legal service properly. BP makes two arguments against the reasonableness of time and labor expended by AOG's attorneys.

First, BP contends that AOG is not permitted to recover fees for the time its attorneys spent working on its unjust enrichment claim. This is not quite correct. It is true that Ark. Code Ann. § 16-22-308 does not authorize attorney fees for unjust enrichment. *Stokes v. Stokes*, 2016 Ark. 182, at *11, 491 S.W.3d 113, 121. However, "fees are permitted when a breach-of-contract action seeks equitable remedies," *id.*, and Arkansas courts routinely award attorney's fees to prevailing parties who bring both contract and non-contract claims "when the action is based primarily in contract," *see, e.g.*, *DWB, LLC v. D & T Pure Trust*, 2018 Ark. App. 283, at *13, 550 S.W.3d 420, 430. As already discussed above, this case was primarily and essentially based in contract; the

---

[4] The Court believes the type of work required of paralegals and trial tech specialists in this case was not so unusually complex as to warrant exceeding the market rate for such professionals in and around Fort Smith.

claim for unjust enrichment was little more than belt-and-suspenders alternative pleading, and there was nearly complete overlap between the facts on which it and the contract claim depended.

Second, BP challenges the reasonableness of time and labor expended by Steven Weiler, who is "of counsel" at Dorsey & Whitney and charged rates as high as $910 per hour. BP points out that his 853.3 hours billed were more hours than were billed by any other individual attorney on AOG's team, constituting 32% of the total hours on which AOG's fee request is based. BP contends that this amount is excessive, reasoning that Mr. Weiler's role must have been "peripheral" given that "he did not participate in a single meet-and-confer call with BP's counsel, take or defend a single deposition in this case, examine any of the eight witness[es] who testified at trial, or even sit at counsel table during the trial." *See* Doc. 141, p. 19 (internally numbered p. 17).

The Court disagrees with BP, though not entirely. A very experienced attorney can provide enormous value to a team of litigators by developing strategy and overseeing the project without getting into the trenches of "trial lawyering" via witness examinations and the like. It seems clear that this is the role Mr. Weiler played on this case, given the type of work his billing entries describe and the nature of his experience in the field. *See, e.g.*, Doc. 137-2, ¶ 4 (describing Mr. Weiler's 37 years of experience specializing in energy law, including regulatory and administrative proceedings as well as federal district and appellate court litigation). Of the 2,171.1 hours billed by AOG's eleven D.C. attorneys and support staff, 2,067.7 were billed by only three people, one of whom was Mr. Weiler. An additional 463.4 hours were billed by AOG's local counsel in Arkansas. Mr. Weiler's role obviously was not peripheral, nor should one reasonably expect it to be so.

However, the Court agrees with BP that Mr. Weiler's billed hours were somewhat excessive given his relative lack of involvement in trial and deposition preparation. The Court believes a reasonable amount of time expended by Mr. Weiler on this case would be 600 hours, rather than the 853.3 that he charged. Subject to that slight downward adjustment, the hours billed by AOG's counsel are reasonable. Multiplying these adjusted hours by the reasonable hourly rates described above yields an attorney's fee of $1,485,166.00. The Court believes this fee is reasonable and adequately compensates AOG's counsel for the quality of results they obtained, such that no upward or downward adjustments to this lodestar are necessary.

As noted above, AOG is also seeking to recover $112,448.54 in costs. Costs are only recoverable if they come within the six categories listed in 28 U.S.C. § 1920: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828. BP argues, and the Court agrees, that a large percentage of the costs that AOG has submitted do not fall within any of these categories. AOG concedes that not all the costs it has submitted are recoverable, but it has not explicitly directed the Court's attention to any costs that are recoverable other than $67,821.90 in deposition transcript costs. It is AOG's burden, not the Court's, to review the 295 pages of invoices it submitted and to separate the recoverable costs from the unrecoverable costs therein. *See, e.g.*, *Elite Aviation Serv., LLC v. Ace Pools, LLC*, 2021 WL 4311812, at *4 (W.D. Ark. Sept. 22, 2021). Therefore, the Court will only award AOG the aforementioned deposition transcript costs, along with the $6,951.08 in costs that

BP concedes are awardable for counsel's Certificates of Good Standing and certain electronic discovery costs that appear to qualify as "exemplification and copies of paper" obtained for use in this case.

This total of $74,772.98 in costs, plus the $1,485,166.00 in fees discussed above, results in a total award of $1,559,938.98 in attorney's fees and costs. AOG is also entitled to postjudgment interest on this award of attorney's fees and costs, which will accrue from today's date until paid. *See Jenkins ex rel. Agyei v. State of Mo.*, 931 F.2d 1273, 1275–77 (8th Cir. 1991).

### III. Conclusion

IT IS THEREFORE ORDERED that Plaintiff Arkansas Oklahoma Gas Corporation's motion to amend judgment to include prejudgment interest (Doc. 139) is GRANTED. AOG will be awarded $2,640,567.53 in prejudgment interest.

IT IS FURTHER ORDERED that AOG's petition for attorneys' fees and costs (Doc. 137) is GRANTED IN PART AND DENIED IN PART. AOG will be awarded $1,485,166.00 in attorney fees and $74,772.98 in costs.

An amended judgment reflecting the relief awarded herein will be filed contemporaneously with this opinion and order.

IT IS SO ORDERED on this 31st day of July, 2023.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE